UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD CURTIS,

                              Petitioner,              **DECISION AND ORDER**

              -vs-                                     No. 02-CV-6226

BRIAN FISCHER, Superintendent,

                              Respondent.


Petitioner, Richard Curtis ("Curtis"), filed this *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging his 1999 conviction in Livingston County Court on

burglary and other charges. Curtis alleges the following grounds for relief: (1) he was not present

in court to controvert the second felony offender statement used to enhance his sentence, and

therefore he was illegally sentenced *in absentia*; and (2) his exculpatory statement, given in the

absence of *Miranda* warnings, was improperly admitted at trial. The parties have consented to

disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction at issue in the instant petition arose from the June 17, 1998 burglary of a

vacant two-family house located at 29 Leonard Street in the Village of Dansville; this house was

immediately next door to Curtis's residence at 27 Leonard Street.

At about 3:30 a.m. on June 17th, Curtis's housemate, Kenneth Donohue ("Donohoue"),

observed Curtis back his truck up to the house and, with the help of "another young man," load a

vacuum cleaner, cabinets and various small tools into the bed of his pick-up truck. Not wanting

to cause a row with his housemate, Kenneth Donohoue contacted his brother, who in turn

anonymously called the owner of the house, Kevin Laursen ("Laursen"). Laursen was told that

"there was something going on at his property and [he]'d better check it out." When he arrived at

29 Leonard Street, Laursen discovered a number of items missing: eight wall cabinets and doors,

a palm sander, a shop-vac, a drywall gun, and some small tools.

On June 19, 1998, Officer Faugh of the Dansville Police Department spied Curtis on the

front porch of his home at 27 Leonard Street and asked to speak with him. Curtis voluntarily

came to the police station and met with Officer Faugh in the station's main office. Curtis was not

restrained and was told several times that he could leave if he did not want to talk to the police.

Although the police considered Curtis to be a suspect--and informed him of that fact--Officer

Faugh did not take Curtis into custody or administer the *Miranda* warnings at that time.

Nevertheless, Curtis gave a signed written statement denying any involvement in the burglary.[1]

On October 7, 1998, a Livingston County Grand Jury returned a sixteen-count indictment

---

[1] The statement read as follows:

"I, Richard Paul Curtis, am 40 years of age, born on August 29, 1957, my address is 27 Leonard Street, Dansville, New York 14437, my occupation is none, and degree of education is 12th grade.

I have been duly warned by Jeffrey Faugh who has identified himself as a police officer . . . that I do not have to make any statement at all and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement and to have my lawyer present with me during questioning. If I cannot afford a lawyer and wish to have one, one will be appointed for me. Without fear of threat or physical harm upon me or another person, I freely volunteer the following statement to the aforementioned person.

I have been in 29 Leonard Street in the past. Kenny [Donohue] took me in there. This was a few months ago. I have not been in there this week. I did not steal anything out of there. I did not steal any cabinets or a counter top or tools. I have read this statement, had this statement read to me, consisting of one page and the facts contained herein are true and correct. I have also been told and understand that making a false written statement is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York." Trial Transcript ("Trial Tr.") at 107-08.

(No. 98-181) charging Curtis with, *inter alia*, third degree criminal sale of a controlled substance and third degree sodomy, which arose from conduct unrelated to the Leonard Street crimes. These charges related to Curtis's alleged actions in June 1998 involving three male complainants.[2] On November 18, 1998, Curtis was charged with the June 17th burglary of 29 Leonard Street by Indictment No. 98-202 containing three counts: third degree burglary, fourth degree grand larceny, and making a punishable false written statement. A third indictment (No. 98-206) also was filed on November 18, 1998, charging Curtis with one count of third degree criminal possession of a weapon; the conduct at issue therein was unrelated to the Laursen burglary.

Curtis was arraigned on Indictment Nos. 98-202 and 98-206 on November 19, 1998. At the pre-trial suppression hearing held on February 23, 1999, County Court Judge Ronald Cicoria ruled that Curtis's voluntary exculpatory statement was inadmissible in the prosecution's case-in-chief on the burglary charge because *Miranda* warnings only were given *after* defendant's statement was reduced to a writing. However, the court ruled that the statement could be used as direct evidence with regard to the making a false written statement charge. *See* Transcript of February 23, 1999 Hearing at 43-44. Defense counsel sought to sever the false statement charge from the remaining counts, but this application was denied.

Curtis was tried before a jury on March 9 to March 10, 1999. The voluntary exculpatory statement was admitted without objection from defense counsel or defendant. Following the

---

[2] This indictment was superseded by Indictment No. 99-061, returned on March 24, 1999.

-3-

reading of the statement into evidence, the court issued a limiting instruction to the jury.[3]

Curtis testified in his own behalf at trial. He admitted that he had been in the house at 29 Leonard Street on one occasion in May 1998. At the time, he was unemployed and doing odd jobs to support himself. According to Curtis, Kenneth Donohue told him that the house at 29 Leonard Street needed a lot of work and suggested that he could do some repairs for the owner. Curtis related that Donohue jimmied open a window with a knife and they went into the house to look around. *See* Trial Tr. at 126-27.

Curtis claimed at trial that Donohue informed that he could have anything he wanted from the shed in the backyard at 29 Leonard Street. Curtis testified that Donohue said that he had been given the items by Laursen for helping to clean up the yard. Curtis stated that he took a sander and a shop-vac from the shed and sold them to John Caito ("Caito"), a contractor for whom he was working. Curtis denied taking any items from inside the house. *See id.* Donohue denied all of Curtis's allegations. Caito confirmed that he had bought the items in question from Curtis for $30.

On March 10, 1999, the jury returned a verdict convicting Curtis of third degree burglary, petit larceny as a lesser included offense of grand larceny, and making a punishable false written statement. Curtis was acquitted of the grand larceny count. The court adjourned sentencing

---

[3]   "I have an instruction I want to give. It is for the jury. Ladies and gentlemen of the jury, this police officer talked about a statement given. Now, even [*sic*] the statement that was given is not inculpatory but basically exculpatory, said [*sic*] he didn't do it. [*sic*] Now, this line of testimony with this witness regarding this statement, okay, is not to be taken as proof on the burglary and the grand larceny. This evidence was given to you under the third count which is the making of a punishable false written statement, a Class A misdemeanor. In other words, he is charged with[,] under the third count[,] of making a false statement. That false statement saying he didn't do it. Okay. So, I don't want you to get confused that this came in as some sort of confession or admission of a burglary or the grand larceny, okay? It is not that. This was given to you specifically because the allegation by the People here is that he made a false written statement, that is the statement that is in evidence. The theory being here, okay, that they put proof in he did it and made a false statement under oath saying he didn't do it." Trial Tr. at 111-12.

-4-

pending the disposition of the other two indictments against Curtis.

On May 11, 1999, Curtis pled guilty to the charge of third degree criminal possession of a weapon contained in Indictment No. 98-206. Dissatisfied with his trial attorney, Curtis moved for, and was assigned, new counsel on June 22, 1999. On October 25, 1999, prior to jury selection for trial on Indictment No. 99-061, Curtis chose to avail himself of a negotiated plea bargain in which he would plead guilty to one count of third degree criminal sale of a controlled substance and one count of third degree sodomy in full satisfaction of the fifteen-count indictment. In return, Curtis would receive a recommended sentence of 10 to 20 years to run concurrently with all of his other charges pending in Livingston County Court.

By this time, Curtis had discharged his second attorney; however, the court asked the attorney to remain as standby counsel. At the plea hearing, the court engaged Curtis in the following colloquy:

|  |  |
|---|---|
| THE COURT: | Now, Mr. Curtis, you do understand you have a right to a jury trial or a trial in front of a judge and you are waiving that right by pleading to two counts of this indictment; do you understand that? |
| THE DEFENDANT: | Yes, I do. |
| THE COURT: | And specifically you would be pleading to sodomy in the third degree, it is an E felony punishable up to four years and I am looking at Count Fourteen, criminal sale of a controlled substance in the third degree, a B felony, punishable up to 25 years; do you understand that? |
| THE DEFENDANT: | Yes, I do. |
| THE COURT: | Now, he is being treated as a second felony offender; is that correct, Mr. Moran? |
| THE PROSECUTOR: | Correct. |
| THE COURT: | You will be treated as a second felony offender. |
| . . . |  |
| THE COURT: | Now, there is a persistent felony offender statute in New York State which basically says that if you are convicted of |

|                 |                                                                                                                                                                                                                                          |
|-----------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                 | more than two felonies in your lifetime and now we are talking about the future, not talking about these charges, if you get another felony in your lifetime you could be treated as a persistent felony offender and the sentence could be up to life; you understand that? |
| THE DEFENDANT:  | Yes, I do.                                                                                                                                                                                                                                |
| THE COURT:      | Does that change your mind in any way in wanting to plead guilty?                                                                                                                                                                         |
| THE DEFENDANT:  | No, it don't [*sic*].                                                                                                                                                                                                                     |

Transcript of October 25, 1999 Plea Hearing at 8-10. Curtis then indicated his desire to enter a guilty plea, and the court accepted it.

On November 30, 1999, the parties appeared for sentencing at which time the prosecutor informed Curtis, his standby counsel, and the court that the state had prepared a second felony offender statement. Neither Curtis nor standby counsel registered any objection. Before the second felony offender issue could be addressed, however, Curtis became extremely agitated upon hearing that the mother of one of his victims wished to address the court. Curtis burst into the following tirade:

|                 |                                                                                                                                                                                                                                          |
|-----------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| THE DEFENDANT:  | I don't want to hear anything from her, not nothin' [*sic*]. If she says anything, I'm going to call her every name in the book, so you better not say anything[,] bitch. You don't want to hear what I've gotta say about your bastard son. Your bastard son turned me in for something I didn't do. |
| THE COURT:      | If you act out of line I will have to have you removed from–                                                                                                                                                                              |
| THE DEFENDANT:  | You can do whatever you want. I don't care. Go ahead and–                                                                                                                                                                                 |
| THE COURT:      | You understand I will have to remove you back outside but you still–                                                                                                                                                                      |
| THE DEFENDANT:  | Remove me then.                                                                                                                                                                                                                           |
| THE COURT:      | –will have to be sentenced.                                                                                                                                                                                                               |
| THE DEFENDANT:  | That's fine with me.                                                                                                                                                                                                                      |
| THE COURT:      | I'm still going to proceed with the sentence. Okay. You want to have your victim say whatever she wants to say?                                                                                                                           |
| THE DEFENDANT:  | I have nothing to say to her and I'm not staying here.                                                                                                                                                                                    |

Transcript of November 30, 1999 Sentencing Hearing at 4-5. As Curtis began to leave the courtroom, the deputies attempted to stop him, whereupon Curtis became "physically combative." It took five court deputies to restrain him, handcuff him, and remove him from the courtroom. *Id.* at 6.

When the prosecutor raised the issue concerning the second felony offender statement later during the sentencing hearing, the court declared that Curtis had consented to be treated as a second felony offender as part of the October 25, 1999 plea negotiations. The court noted that the record from the plea colloquy "clearly indicate[d]" that Curtis was going to be treated as a second felony offender. *Id.* at 7; *see* Transcript of October 25, 1999 Plea Hearing at 8-10. Curtis accordingly was sentenced to 3½ to 7 years on the burglary charge; 1 year on the petit larceny charge; and 1 year on the making a false written statement charge.[4] All sentences were to be served concurrently.

On September 28, 2001, the Appellate Division, Fourth Department, modified the judgment by reversing the conviction of making a punishable false written statement, vacating the sentence imposed thereon, and dismissing that count of the indictment. *People v. Curtis*, 286 A.D.2d 900 (4th Dept. 2001). The convictions on the remaining two counts were unanimously affirmed. *Id.* The New York Court of Appeals denied leave to appeal on February 23, 2002. *People v. Curtis*, 97 N.Y.2d 728 (2002).

Curtis filed a collateral motion to vacate the judgment, the substance and outcome of

---

[4] With regard to Indictment No. 98-206, Curtis received 1½ to 3 years on the criminal possession of a weapon charge. With regard to Indictment No. 99-061, Curtis was sentenced to 2 to 4 years on the sodomy charge and 10 to 20 years on the criminal sale of a controlled substance charge. Sentences for all of the charges in the three indictments were set to run concurrently with each other.

which are not relevant here. This habeas petition pursuant to 28 U.S.C. § 2254 followed. For the

reasons set forth below, Curtis's petition is denied.

## DISCUSSION

### Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a

collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28

U.S.C. § 2254(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S.

1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have

presented his constitutional claim to the highest state court from which a decision can be

obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933

F.2d 117, 119 (2d Cir. 1991)). A claim is properly exhausted when the state court is fairly

apprised of the claim's federal nature and of the factual and legal premises underlying the claim.

*Grey*, 933 F.2d at 119-20.

A habeas petitioner has a number of ways to fairly present a claim in state court without

citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases

employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in

like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific

right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." *Daye v. Attorney General of New York*, 696 F.2d 186,

194 (2d Cir. 1982) (*en banc*); *accord, e.g., Strogov v. Attorney General*, 191 F.3d 188, 191 (2d

Cir. 1999).

Respondent asserts that Curtis's sentencing claim is unexhausted because he only asserted

it as a state law claim and did not argue that any Federal constitutional rights were violated.

Respondent's Memorandum of Law at 3-4 (Docket #5). On direct appeal, counsel argued that

Curtis's sentence was illegal because the court failed to follow the procedures set forth in New

York Criminal Procedure Law ("C.P.L.") § 400.21 for determining whether a defendant should

be adjudicated as a second felony offender. Section 400.21(3) provides for a hearing to be held at

which time the defendant must be given a copy of the statement prepared by the prosecutor

setting for the predicate felonies to be used and must be asked whether he controverts any of the

felony accusations made in the application. *See* N.Y. CRIM. PROC. LAW § 400.21(3). Here,

however, Curtis was not present for most of the sentencing procedure. In rejecting this claim, the

Appellate Division stated,

> [D]efendant was properly sentenced *in absentia* as a second felony offender. The
> record establishes that the People filed a predicate felony statement before
> sentence was imposed, in compliance with CPL 400.21(2). Before the court could
> comply with the remaining procedures set forth in CPL 400.21, however,
> defendant engaged in highly disruptive conduct and, after being warned by the
> court, was removed from the courtroom. "The conduct of defendant at sentencing
> was sufficiently 'obstreperous' to effect a forfeiture of his right to be present"
> (*People v. Fulton*, 202 A.D.2d 1042, 610 N.Y.S.2d 109, *lv. denied* 83 N.Y.2d 910,
> 614 N.Y.S.2d 392, 637 N.E.2d 283; *see also, People v. Stroman*, 36 N.Y.2d 939,
> 940, 373 N.Y.S.2d 548, 335 N.E.2d 853), and the court therefore properly
> sentenced him in absentia as a second felony offender (*see, People v. Hooper*, 133
> A.D.2d 347, 348, 519 N.Y.S.2d 247).

*People v. Curtis*, 286 A.D.2d at 901.

After reviewing Curtis's appellate brief, I conclude that counsel fairly presented the

substance of Curtis's constitutional claim to the state court. At the outset, I note that "[o]ne of the

most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be

present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970)

(citing *Lewis v. United States*, 146 U.S. 370 (1892)). Thus, Curtis's claim that he was improperly sentenced *in absentia* certainly alleges a pattern of facts that is "well within the mainstream of constitutional litigation," *Daye*, 696 F.2d at 194.

Although appellate counsel did not cite any Supreme Court cases in his brief, he relied upon *People v. Seppini*, 119 Misc. 2d 125, 128 (N.Y. Sup. Ct. 1983), which observed that "[i]t is well established that a defendant has an absolute right to be present at trial," but that this "constitutional right may be waived by the voluntary absence from the trial." *Id.* (citing, *inter alia*, U.S. CONST. amend. VI; N.Y. CONST. art. I, §6; *Diaz v United States*, 223 U.S. 442, 445 (1912); *Snyder v Massachusetts*, 291 U.S. 97, 106 (1934)). Thus, by relying upon state cases which employed federal constitutional analysis, appellate counsel also fulfilled the second method set forth in *Daye* for exhausting habeas claims. *See Daye*, 696 F.2d at 194.

Finally, I note that the Appellate Division cited *People v. Stroman*, 36 N.Y.2d 939, *supra*, which in turn relied upon *Illinois v. Allen*, 397 U.S. 337, *supra*, for the proposition that a defendant, by his obstreperous conduct, may waive his right to be present when sentenced is pronounced. Thus, it appears that the state appellate court was aware of the constitutional dimension of Curtis's claim. Accordingly, I find that the claim has been fully exhausted and is properly before me on habeas review.

## Merits of the Petition

**Claim 1:      Petitioner was illegally sentenced**

### A.      Court failed to follow statutory procedures

To the extent that Curtis claims that the court failed to follow the procedures set forth in C.P.L. § 400.21 for sentencing second felony offenders, he alleges violations of state statutory

law which are not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to reexamine state court determinations of state law). In any event, it appears that the court "substantially complied" with the purposes of C.P.L. § 400.21. *See, e.g., People v. Polanco*, 232 A.D.2d 674, 675 (3d Dept. 1996). Moreover, Curtis has not shown that he suffered any prejudice or surprise as a result of the way that the sentencing proceeding was conducted; he has never claimed that he was unaware of the court's intention to sentence him as a second felony offender. Curtis admitted at his plea colloquy, in open court and under oath, to the felony which formed the basis of his enhanced sentence. In fact, Curtis had notice of the prosecutor's intent to seek second felony offender status as early as November 19, 1998, since the prosecutor attached to the back of the indictment a statement alleging that on August 21, 1991, Curtis had been convicted after a guilty plea of the crime of second degree sodomy and sentenced accordingly. *See* Transcript of November 19, 1998 Appearance at 3. Finally, I note that it was Curtis who, by his disruptive behavior, prevented the court from strictly complying with the statutory procedures.

**B.      Sentencing *in absentia***

The Confrontation Clause of the Sixth Amendment of the Constitution guarantees to criminal defendants the right to be present in court during every phase of their trial. *Illinois v. Allen*, 397 U.S. at 338. In the usual case, the court "must indulge every reasonable presumption against the loss of constitutional rights." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). However, the Supreme Court in *Allen* "explicitly" held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he

-11-

continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.*

In the instant case, Curtis not only was verbally abusive to the court and to the victim's mother who was present in court, he also was physically combative; no fewer than five courtroom deputies were required restrain him. The court warned Curtis twice that if he continued to act out of line, he would have to be removed. Despite these admonitions, Curtis continued to conduct himself in a belligerent manner and ultimately became physically aggressive toward court personnel. By his actions in court, Curtis knowingly cost himself his right to be present at his sentencing. On the facts before me, I see no constitutional violation in the court's sentencing of Curtis *in absentia*. The Appellate Division's rejection of this claim was neither "contrary to," nor an "unreasonable application of," governing Supreme Court precedent.

**Claim II.      Improper introduction of exculpatory evidence**

Curtis contends that his exculpatory statement, which the court held was inadmissible with respect to the burglary charge because it was given in the absence of *Miranda* warnings, should not have been admitted for the limited purpose of proving the false statement charge. On direct appeal, the Appellate Division agreed that the statement should not have been introduced as evidence-in-chief that Curtis made a punishable false written statement:

> Although a statement obtained in violation of a defendant's *Miranda* rights may be used to impeach a defendant who takes the stand and whose testimony is inconsistent with his illegally obtained statement, such a statement is not admissible as evidence-in-chief. Any prejudice with respect to the burglary and larceny charges, however, was alleviated by the court's limiting instruction, which the jury is presumed to have followed.

-12-

*People v. Curtis*, 286 A.D.2d at 901 (internal citations omitted). Accordingly, the court vacated

the conviction of making a punishable false written statement and dismissed that count of the

indictment. *Id.*

The sole issue before the Court on habeas review is whether admission of the Curtis's

exculpatory statement violated federal constitutional guarantees of due process. Because the

federal courts have no authority to review issues of state law, erroneous application of state

evidentiary rules alone does not merit habeas relief. *See Estelle v. McGuire*, 502 U.S. at 67-68;

*Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998). "The introduction of improper evidence

against a defendant does not amount to a violation of due process unless the evidence 'is so

extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan*, 137

F.3d at 125 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation

marks omitted in original).

Although the trial court's initial admission of Curtis's statement was improper, it plainly

did not amount to reversible prejudicial error. I note that the statement was exculpatory, rather

than inculpatory, and it was consistent with Curtis's testimony at trial. Moreover, the trial court's

limiting instruction was sufficient to dispel any minimal prejudice that might have arisen. *See*

*Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) ("We normally presume that a jury will follow an

instruction to disregard inadmissible evidence inadvertently presented to it. . . ."); *see also*

*United States v. Nixon*, 779 F.2d 126, 133 (2d Cir.1985) (cited in *United States v. Rondon*, 205

F.3d 1326, 2000 WL 232274, at *3 (2d Cir. Feb. 28, 2000) (unpublished opinion)).

Consequently,  I cannot find that the introduction of Curtis's exculpatory statement resulted in

fundamental unfairness with regard to the jury's consideration of the burglary and larceny

charges. Thus, habeas relief is not warranted.

## CONCLUSION

For the reasons stated above, Richard Curtis's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Curtis has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      August _5_, 2005
            Rochester, New York.

-14-